IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DORIS JANE NEUMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 15-cv-10507 |
| | ) | |
| BORG-WARNER MORSE TEC LLC, et al., | ) | Judge Aspen |
| | ) | |
| Defendants. | ) | JURY DEMANDED |

### MW Custom Papers, LLC, as Successor-in-interest to the Mead Corporation's Reply in Support of Its Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint

Plaintiff bases her opposition to MW Custom Papers, LLC, as Successor-in-interest to the Mead Corporation's ("Mead") motion upon fallacies. First, despite Plaintiff's suggestion to the contrary, the Illinois Supreme Court's decision in *Simpkins* did not recognize the existence of a cause of action for secondary exposure. Even if a remote product manufacturer had a duty to a person who never saw or even used its product under Illinois law, which it does not, Plaintiff's complaint still fails because it does not contain specific factual allegations as to Mead but instead is filled with only conclusions. More fundamentally, foreseeability is not the only element of Illinois' duty analysis. Finally, as will be explained below, Plaintiff's complaint is insufficient to justify the imposition of a duty and no amendment could ever cure that defect. For these reasons, the motion to dismiss should be granted and Plaintiff should not be granted leave to amend her complaint as to Mead.

### A. The Illinois Supreme Court Has Not Imposed A Duty To Warn On A Product Manufacturer To A Person That Never Used Its Products.

Plaintiff has not and cannot cite a single case where Illinois has imposed a duty to warn non-users of its products. Rather than admit that her complaint would require a gross expansion

of Illinois law, Plaintiff offers the Court an incorrect reading of the Illinois Supreme Court's

decision in *Simpkins v. CSX Transportation*. (Doc. #72, 4-5). Plaintiff argues that Simpkins

affirmatively approved a duty to warn of all foreseeable dangers from the use of asbestos.  It did

no such thing.  The Court did not "agree with the plaintiff that there is a 'duty to guard against

reasonably probable and foreseeable injuries that naturally flow from defendant's use of

asbestos.'" (Doc. #72, 5).  In fact, when read in context, the passage Plaintiff cherry-picked was

the court setting out the question it was called to answer:

> "[P]laintiff contends that there is a duty of care that is established under the first
> model of duty—a duty to guard against reasonably probable and foreseeable
> injuries that naturally flow from defendant's use of asbestos. Thus, we must turn
> to the four factors laid out above. The controlling question then becomes whether
> plaintiff sufficiently alleged facts that, if proven, would establish a duty of care
> owed by defendant to Annette Simpkins."

*Simpkins*, 2012 IL 110662, ¶22, 965 N.E. 2d 1092, 1098. Taken as a whole, this passage sets out

the question presented to the Court—not an agreement with Plaintiff's position. This is clearer

because the *Simpkins* court ultimately declined to answer the question as the plaintiff's complaint

was so devoid of specific facts that the Court could not conduct the required analysis. *Id*. at ¶28,

965 N.E. 2d at 1099. So, Plaintiff's suggestion that *Simpkins* stands for a proposition that a

company always owes a duty related to asbestos is just wrong. No Illinois case has stood for such

a sweeping proposition and this Court should decline to be the first to do so under Illinois law.

Plaintiff doubles down on her misinterpretation of *Simpkins* by arguing that it effectively

abandoned the need for a court to find a relationship between the parties to impose a duty.  (Doc.

#72, 5). Plaintiff states that by doing so the Illinois Supreme Court "effectively overruled"

*Nelson v. Aurora Equipment Co.*, and *Rodarmel v. Pneumo Abex, L.L.C.* (Doc. #72, 5). Once

again, Plaintiff is simply wrong on the meaning of *Simpkins*. The Illinois Supreme Court did not

abandon its long-standing requirement that a relationship must exist between the parties to

impose a duty. *Simpkins*, 2012 IL 110662, ¶¶ 18, 19, 965 N.E. 2d at 1097. Rather, the Court

merely clarified that when it discusses a "relationship" as part of a duty analysis, the Court

means it as "shorthand description for the sum of four factors: (1) the reasonable foreseeability

of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against

the injury, and (4) the consequences of placing that burden on the defendant." *Id*. ¶ 18, 965 N.E.

2d at 1097. At no point did the Court find that its shorthand "relationship" is not required if an

injury is foreseeable. In fact, the Court went on and attempted to conduct its "relationship"

analysis to determine if a duty existed.[1] So, to state a claim for negligence in cases where a

plaintiff alleges the defendant contributed to the risk, Illinois has always and still does require the

Plaintiff to allege sufficient facts to establish a "relationship"—when that term is properly

understood to be a shorthand for the four-factor duty analysis. For Plaintiff's complaint in this

case to survive, she must have alleged sufficient facts to allow the Court to perform the full four-

factor relationship analysis.  She failed to do so.

Much like the case in *Simpkins*, Plaintiff has not alleged facts related to when any person

let alone Mead would have been aware of the dangers posed by take home exposure.  Instead, the

complaint contains mere conclusions about Mead (and every other defendant) knew or should

have known of the danger posed by take-home asbestos exposure.  As the Illinois Supreme Court

found in *Simpkins*, factual conclusions of this type are not sufficient to allow the Court to

undertake the necessary analysis. So, the Complaint must be dismissed for this reason alone.

**B. Even If Plaintiff Had Alleged Sufficient Facts Regarding Foreseeability, Her Complaint Must Be Dismissed Because Illinois' Duty Analysis Does Not End With Foreseeability.**

Next, in her futile attempt to save her claims, Plaintiff's response goes on to skew the

importance of foreseeability under Illinois law's duty analysis. Plaintiff essentially argues that a

---

[1] The Court went on to state that a "special relationship" is required in cases when the Defendant is not alleged to have created the risk of harm. *Simpkins*, 2012 IL 110662, ¶ 20, 965 N.E. 2d at 1097-98.

duty exists under Illinois law if an injury is foreseeable. (Doc. #72, 6). That is not the case.

Illinois has a **four**, not one, factor test to determine if a duty should be imposed. *See, e.g.*,

*Simpkins*, 2012 IL 110662, ¶¶ 21-22, 965 N.E. 2d at 1098 (stating to determine whether a duty

exists it had to "turn to the *four* factors laid out above.") (emphasis supplied). Naturally, one of

those factors is foreseeability because "[i]f the injury was not reasonably foreseeable, no duty

can exist." *Simpkins*, 2012 IL 110662, ¶ 24, 965 N.E. 2d at 1098. However, the analysis does

not end there. In fact, in *Simpkins*, the Illinois Supreme Court explicitly stated that

"foreseeability *is not the only factor* we consider." (emphasis supplied) *Id.*, ¶ 24, 965 N.E. 2d at

1098. The remaining three factors are: (1) the likelihood of the injury, (2) the magnitude of the

burden of guarding against the injury, and (3) the consequences of placing that burden on the

defendant. *Id.*, ¶ 21, 965 N.E. 2d at 1098. Thus, Plaintiff's reliance on cases and jurisdictions

where foreseeability is the end of the analysis are unavailing.

   Even if the Complaint contained sufficient facts to allow the Court to determine whether

her injury was foreseeable, examination of the last two factors of Illinois duty analysis makes

clear no duty can exist in these circumstances. These factors are the magnitude of the burden

and the consequences of imposing that burden on the Defendant. Plaintiff's response makes no

effort to address these portions of the duty analysis and accordingly Mead's arguments related to

them remain unopposed. Simply, the burden of the duty and consequences of imposing it on

Mead and others like it would be "extremely onerous and unworkable." *In re Certified Question*

*From the Fourteenth District Court of Appeals of Texas*, 479 Mich. 498, 740 N.W.2d 206, 219

(2007). As stated in Mead's motion, there is no question that the burden of imposing a duty on

remote manufacturers to warn those who never came into contact with its products would be

massive. And the consequence of imposing such a burden on companies like Mead would be

catastrophic. Further, the magnitude of the burden would be even greater in this case because in

4

the 1970s there is no way Mead could have ensured its warnings would ever reach every person Plaintiff contends Mead should have warned. In addition, there is the real possibility that creating that burden would be lead to ubiquitous warnings on all products that would have the potential of rendering all warnings ineffective. As such, even if the risk of injury from household asbestos exposure was foreseeable at the time Plaintiff alleges it occurred, Mead's motion should be granted because the burden created by imposing a duty to warn all potential family members, roommates, visitors or other acquaintances of end users would be too great and against public policy.

Further, the cases from jurisdictions outside of Illinois that found a duty to exist in a "take-home" case which Plaintiff cites do not compel a different result. As predicted in Mead's initial memorandum, those cases are all distinguishable. *Compare* Doc. # 45, p. 9-10 *with* Doc. #72, 6-7. First, the cases cited involve primarily premises owners and employees and state-specific product liability statutes not at issue in this case. (Doc. # 45, p. 9-10). Next, the cases cited by Plaintiff which were not addressed in Mead's initial memorandum provide no better support for her claim in this case.[2] For example, in *Bobo v. Tennessee Valley Authority*, 2015 WL 5693609 (N.D. Ala. Sept. 29, 2015), the wife of an employee of the Tennessee Valley Authority filed suit against her husband's employer. Similarly, the Plaintiff in *Zimko v. American Cyanamid*, 905 So.2d 465, 483 (La. App. 2005), was seeking damages from his father's employer. *See also Chaisson v. Avondale Indus., Inc.*, 947 So.2d 171 (La. App. 2007) (also involving claims against an employer).

---

[2] Both Maryland cases cited were decided over a decade before the Maryland Court of Appeals decision in *Georgia Pacific, LLC v. Farrar* which made clear that under Maryland law no duty exists from a remote product manufacturer to the family of an end user. Compare Farrar, 432 Md. 523, 69 A.3d1028 (2013) with *Anchor Packing Co. v. Grimshaw*, 692 A.2d 5 (Md. Ct. Spec. App. 1997); *ACandS, Inc. v. Abate*, 710 A.2d 944 (Md. Ct. Spec. App. 1998). So, *Grimshaw* and *Abate* no longer represent the law in Maryland.

Interestingly, one of the cases cited by Plaintiff found no duty existed to the family of an end user because there was no evidence that better warnings by the manufacturer would have prevented the household exposure. *Sherin v. Crane-Houdaille, Inc.*, 47 F.Supp.3d 280, 300 (D. Md. Sept. 16, 2014). In that case, the District of Maryland found that under *Georgia Pacific v. Farrar*, 432 Md. 523, 69 A.3d 1028 (2013), the Plaintiff had to show the duty would have been effective at preventing the injury.  Since plaintiff pointed to no such evidence, the Court found that no duty existed to warn the take-home Plaintiff. *Sherin,* 47 F.Supp. at 300. The same result is warranted here.

Because Plaintiff has presented no factual allegations or argument related to the final two factors of Illinois' duty analysis and Mead's arguments that the burden and consequences of imposing a duty on it would be too great, Mead's motion should be granted.  And Plaintiff's complaint should be dismissed against it.

### C.  Plaintiff Should Not Be Afforded An Opportunity To Amend Her Complaint.

In the event the Court agrees to dismiss her woefully insufficient complaint, Plaintiff seeks leave to file an amended complaint. This request should be denied.  Although leave to amend should be freely granted if the defect is curable, the Court need not accept an amended complaint "where it is apparent that it fails to cure the defects identified in the original complaint." *Arazie v. Mullane*, 2 F.3d 1456, 1464 (7th Cir.1993). The Court can deny leave to amend if the amendment would be futile.  *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir.2013). In this case, there is nothing Plaintiff can allege that would remedy the fact that she was never a user of Mead's products. There is also nothing Plaintiff can allege that would change the reality that imposing a duty on Mead would be "extraordinarily onerous and unworkable." *Simpkins*, 2012 IL 110662, ¶38 (J. Freeman, *dissenting*) quoting  *In re Certified Question From the Fourteenth District Court of Appeals of Texas*, 479 Mich. 498, 740 N.W.2d 206, 219 (2007).

This is further supported because Plaintiff has not provided the Court with a copy of her proposed amended complaint. *Crestview Vill. Apartments v. United States Dep't Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir.2004). In a situation when the defect cannot be cured, as is the case here, the Court should not allow Plaintiff to file an amended complaint particularly when she fails to identify how she plans to amend the complaint.

For these reasons and those identified in its original motion and memorandum in support, MW Custom Papers, LLC as Successor-in-interest to the Mead Corporation requests its motion be granted and Plaintiff's Complaint against it be dismissed.

Date: February 1, 2016

Respectfully submitted,

SEGAL McCAMBRIDGE SINGER & MAHONEY, LTD.

By:     */s/Anastasios T. Foukas*
        One of the Attorneys for Defendant
        **MW CUSTOM PAPERS, LLC**
        Adam J. Jagadich – ARDC #6280278
        Anastasios T. Foukas – ARDC #6281404
        Segal McCambridge Singer & Mahoney, Ltd.
        233 S. Wacker Drive, Suite 5500
        Chicago, Illinois 60606
        Tel:    (312) 645-7800
        Fax:    (312) 645-7711

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 1, 2016, I electronically filed the foregoing true and correct copy of *MW Custom Papers, LLC's Reply in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint* with the Clerk of Court using the CM/ECF System which will send notification of such filing to all counsel of record in the above-referenced matter.

*/s/Anastasios T. Foukas*
Anastasios T. Foukas
