# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DORIS JANE NEUMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10507 |
| v. | ) | Hon. Marvin E. Aspen |
| | ) | |
| BORG-WARNER MORSE TEC LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Doris Jane Neumann filed this negligence action in Illinois state court against several manufacturers or distributors of asbestos-laden products. In this "take-home" or "secondary" asbestos lawsuit, Neumann alleges that she contracted malignant mesothelioma through her exposure to asbestos fibers unwittingly brought home by her son, who utilized Defendants' products at work.

Presently before us is a motion to dismiss filed by defendant MW Custom Papers, LLC, as successor-in-interest to the Mead Corporation ("MW Custom Papers"). (Dkt. No. 42.) MW Custom Papers contends that Neumann's negligence claim fails as a matter of law because it did not owe her any duty. For the reasons discussed below, we grant the motion.

## BACKGROUND

According to the complaint, Neumann's son, Greg, worked as a gas station attendant and mechanic from approximately 1970 through 1974. During that time, Greg worked with asbestos-containing products, including friction paper supplied by MW Custom Papers. (Compl. ¶ 2.) In handling the friction paper, and other materials produced by the various Defendants, Greg was exposed to high levels of asbestos fibers. He then carried these fibers home on his clothing,

1

where they frequently were ingested and inhaled by his mother. (*Id.*) Neumann alleges that she was exposed to asbestos through contact with her son and through laundering his clothes and, moreover, that this exposure directly caused her to develop mesothelioma, a form of cancer caused by asbestos. (*Id.* ¶¶ 2–4, 13–15.) Neumann was diagnosed on September 17, 2015 and alleges that she has become disabled, suffered great pain, and incurred significant medical expenses. (*Id.* ¶¶ 5–6, 14–15.)

In setting out her negligence claim, Neumann alleges that each Defendant, including MW Custom Papers, "had actual knowledge or, in the exercise of reasonable care, should have known of the dangerous propensities of asbestos-containing products . . . and that exposure to the asbestos from those products . . . could cause injury, disease and death." (*Id.* ¶ 8.) Neumann asserts that it was reasonably foreseeable to Defendants that people working with their asbestos-containing products "would be ignorant of their dangers . . . and would expose others, all of whom would suffer serious and fatal diseases." (*Id.* ¶ 9.) She expressly alleges that Defendants had a duty to exercise reasonable care "so as to avoid disease and injury to those working with or near their products and their family members who they might, in turn, expose through their dusty work clothes." (*Id.* ¶ 10.) She claims that Defendants failed to investigate the dangers of their asbestos-containing products to "users and those in proximity to users," failed to warn Neumann or her son of the dangers to which they were exposed, and failed to instruct them as well as "others in the proper handling of asbestos products." (*Id.* ¶ 11.) Neumann seeks damages as compensation for her pain, anguish, past and future impairments, and expenses, and as punishment of Defendants. (*Id.* ¶ 15.)

Defendants removed this action from state court on November 20, 2015. MW Custom Papers subsequently filed a motion to dismiss with prejudice under Federal Rule of

Civil Procedure 12(b)(6). (Dkt. No. 43.) MW Custom Papers contends that Neumann failed to plead sufficient facts to state her claim and, moreover, that it cannot be held liable for negligence because it owed her no duty.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion is meant to "test the sufficiency of the complaint, not to decide the merits of the case." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Although a facially plausible complaint need not contain "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555, 127 S. Ct. at 1964.

# ANALYSIS

MW Custom Papers' motion raises two arguments, which we address in turn. We begin with the argument that Neumann's complaint lacks specific facts and will then focus on the primary legal argument concerning recognition of the alleged duty of care.

### A. Sufficiency of the Facts Plead as to Foreseeability

In its motion, MW Custom Papers first contends that Neumann's complaint lacks sufficient facts, particularly as to foreseeability. (Mem. at 3–4, 6–7.) We review both the basic elements of Neumann's claim and her allegations.

#### 1. Principles of Negligence and Duty in Illinois

To state a claim for negligence in Illinois, a plaintiff must allege "the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Simpkins v. CSX Transp., Inc.*, 358 Ill. Dec. 613, 617, 965 N.E.2d 1092, 1096 (Ill. 2012); *Adams v. N. Ill. Gas Co.*, 211 Ill.2d 32, 43, 809 N.E.2d 1248, 1257 (Ill. 2004). As the Illinois Supreme Court has repeatedly noted, "[t]he concept of duty in negligence cases is involved, complex, and nebulous." *Simpkins*, 358 Ill. Dec. at 617, 965 N.E.2d at 1096; *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 435, 856 N.E.2d 1048, 1056–57 (Ill. 2006). The existence of a duty in any given "case is a question of law for the court to decide" and "involves considerations of public policy." *Simpkins*, 358 Ill. Dec. at 617–18, 965 N.E.2d at 1096–97; *see Marshall*, 222 Ill. 2d at 430, 856 N.E.2d at 1053–54.

Under Illinois law,

> every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons.

*Simpkins*, 358 Ill. Dec. at 618, 965 N.E.2d at 1097 (quoting *Widlowski v. Durkee Foods*, 138 Ill.2d 369, 373, 562 N.E.2d 967, 968 (Ill. 1990)). In other words, "if a course of action creates a foreseeable risk of injury, the individual engaged in that course of action has a duty to protect others." *Simpkins*, 358 Ill. Dec. at 618, 965 N.E.2d at 1097. This duty cannot, and does not, run "to the world at large," but is limited by four considerations. *Simpkins*, 358 Ill. Dec. at 618, 965 N.E.2d at 1097. In determining whether a duty arises, we thus assess: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.*; *Krywin v. Chi. Transit Auth.*, 238 Ill.2d 215, 226, 938 N.E.2d 440, 447 (Ill. 2010); *Marshall*, 222 Ill. 2d at 436–37, 856 N.E.2d at 1057.

Although the first factor, foreseeability, is essential to finding the existence of a duty, the weight given to each of the factors depends on the circumstances. *Simpkins*, 358 Ill. Dec. at 618–19, 965 N.E.2d at 1097–98; *Widlowski*, 138 Ill.2d at 374–75, 562 N.E.2d. at 969. Additionally, we evaluate the foreseeability of the risk of harm not in hindsight but from the perspective "at the time defendant engaged in the allegedly negligent action." *Simpkins*, 358 Ill. Dec. at 619, 965 N.E.2d at 1098; *see Widlowski*, 138 Ill.2d at 374–75, 562 N.E.2d. at 969.

### 2. Consideration of Neumann's Complaint

With these principles in mind, we return to the motion. MW Custom Papers argues that the complaint includes only conclusory allegations, inadequate to plead the existence of any duty. In doing so, MW Custom Papers compares Neumann's allegations to those found deficient by the Illinois Supreme Court in *Simpkins v. CSX Transportation, Inc.* Before proceeding with our analysis, we briefly review the *Simpkins* case and procedural history.

The facts alleged in *Simpkins* were similar to those present here. The plaintiff, Annette Simpkins, alleged that her husband, Ronald, was exposed to raw asbestos and asbestos-containing materials when he worked for defendant CSX Transportation from 1958 to 1964. 358 Ill. Dec. at 615–16, 965 N.E.2d at 1094–95. Annette claimed that she contracted mesothelioma from inhaling asbestos fibers that Ronald carried home from work on his person and clothing. *Id*. Before her death, she sued CSX Transportation for negligence, among other things. *Id.* CSX Transportation filed a motion to dismiss, which the circuit court summarily granted. 358 Ill. Dec. at 616, 965 N.E.2d at 1095. The circuit court agreed with CSX Transportation that no Illinois court had recognized that an employer might owe a duty to protect an employee's family members from asbestos exposure. *Simpkins v. CSX Corp.*, 401 Ill. App. 3d 1109, 1111–12, 929 N.E.2d 1257, 1260–61 (5th Dist. 2010).

On appeal, the Fifth District reversed, explicitly holding that such a duty existed and permitting the case to proceed. *Id.* at 1119–20, 929 N.E.2d at 1266. The Illinois Supreme Court then took the question but found that Simpkins' complaint did not include enough factual detail for it to determine whether a duty arose in that particular case. *Simpkins*, 358 Ill. Dec. at 620, 965 N.E.2d at 1099. In particular, the court found that the complaint did not adequately allege what CSX Transportation knew about the potential harms of asbestos during Ronald's employment. The court thus concluded that it could not assess whether the injury was foreseeable and remanded the case so that Annette could amend the complaint. *Id.* Ultimately, the Illinois Supreme Court did not undertake the four-factor analysis and did not address whether a duty could exist as a matter of public policy, as the Fifth Circuit had held. *Id.*

Here, MW Custom Papers argues that Neumann's allegations are factually insufficient, as the Illinois Supreme Court held in *Simpkins*. MW Custom Papers correctly points out that

6

Neumann's allegations do not include much factual detail about any of the Defendants. It harps in particular on Neumann's claim that it "knew or should have known" of the dangers of asbestos. (Mem. at 6.) MW Custom Papers further contends that Neumann should have included, for example, "allegations about how warning her son . . . could have prevented or even mitigated her injury." (Mem. at 3.) While Neumann's complaint could have added specificity as to foreseeability, dismissal is unwarranted.

It is undisputed that "Illinois is a fact-pleading jurisdiction." *Simpkins*, 358 Ill. Dec. at 620, 965 N.E.2d at 1099. Yet federal court—to which Defendants voluntarily removed this case—is not. As noted earlier, we require only that the complaint include enough facts so that the right to relief is more than speculative and so that the defendant can prepare a defense. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65; *see also* Fed. R. Civ. P. 8(a)(2) (requiring that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief"). Here, Neumann alleges that Defendants made or distributed asbestos-containing products or equipment, and she identifies the products they supplied that her son handled. (Compl. ¶ 2.) She further alleges that Defendants knew, or at least should have known, of the dangerous nature of the very products they manufactured and/or distributed. (*Id.* ¶ 8.) She claims that Defendants therefore should have foreseen the life-threatening injury she has suffered and yet failed to take relatively simple steps (i.e., warnings, instructions on handling, recommendations for protective gear, etc.) to prevent harm to the end users of their products, like her son, and those in proximity to those users, like her. (*Id.* ¶¶ 3–4, 9–11.) We find that these

allegations are sufficient under our broader notice pleading standards to establish that

Neumann's injury was reasonably foreseeable to Defendants.[1]

### B. Consideration of the Remaining Factors and Public Policy

Having found the foreseeability factor satisfied, we turn to consider and weigh the other factors. MW Custom Papers does not challenge the sufficiency of the allegations as to the second duty factor, the likelihood of injury. (*See* Mem. at 7, 11–13; Reply at 4–6.) We thus focus on the two remaining policy-oriented factors: "the magnitude of the burden of guarding against the injury" and "the consequences of placing that burden on the defendant." *Simpkins*, 358 Ill. Dec. at 618, 965 N.E.2d at 1097; *Krywin*, 238 Ill.2d at 226, 938 N.E.2d at 447; *Marshall*, 222 Ill. 2d at 436–37, 856 N.E.2d at 1057. As discussed below, these factors highlight an open question in Illinois law, which we cannot answer in Neumann's favor.

In its briefing, MW Custom Papers contends that the burden of protecting family members from secondary asbestos exposure would be substantial. (Mem. at 11–12; Reply at 4–5.) MW Custom Papers argues that this burden would be onerous because there was no practical way that it could have protected Neumann. As MW Custom Papers points out, it did not employ

---

[1] Even if we found these foreseeability allegations lacking, we would grant Neumann's request to amend her complaint under Rule 15, (Resp. at 8), rather than dismiss with prejudice. Based on our research, an amendment as to foreseeability would not be futile. For example, it would not be futile for Neumann to amend in an effort to include express allegations that by the time her son worked with these asbestos products, from 1970 to 1974, Defendants were aware of the dangers of take-home exposure to asbestos. *See, e.g.*, *Simpkins*, 358 Ill. Dec. at 622, 965 N.E.2d at 1101 (asserting that the majority's remand order is pointless because "it is generally accepted that the first medical studies of bystander exposure were not published until 1965") (Freeman, J., dissenting); *Holmes v. Pneumo Abex, L.L.C.*, 353 Ill. Dec. 362, 367–68, 955 N.E.2d 1173, 1178 (4th Dist. 2011) (dismissing claim based on exposure in 1962–1963 where plaintiff's expert testified that "the first epidemiological study showing an association between disease and asbestos fibers brought home from the workplace was presented and published . . . in October 1964")); *see also Rodarmel v. Pneumo Abex, L.L.C.*, 354 Ill. Dec. 6, 25, 957 N.E.2d 107, 126 (4th Dist. 2011) (citing *Holmes* and finding that "it was unknown, in the mid-1950s, that a thin coating of asbestos dust on clothing was, indeed, in that quantity, 'poisonous dust'").

either Neumann or her son.  According to MW Custom Papers, as a manufacturer, it thus had no feasible means of communicating any warnings or instructions to her.  Nor could it require her son, or his employer, to comply with any warnings or recommendations (i.e., handling restrictions, installation of showers at the worksite, offering laundry services, etc.) that might have been useful in preventing any harm.  (*Id.*)  MW Custom Papers further argues that placing this burden on it would be poor public policy as well as unfair, as it would fault the company for failing to do what it could not have done.  (*Id.*)  The company contends that such a "catastrophic" result would transform manufacturers into "*de facto* insurers . . . to a virtually unlimited population of individuals."  (Mem. at 2; *see id.* at 11–12; Reply at 4–5.)  Finally, MW Custom Papers asserts that imposition of such a burden would "lead to ubiquitous warnings on all products that would have the potential of rendering all warnings ineffective."  (Reply at 5.)

Before exploring the policy issues, we note that Neumann did not address these two factors in her opposition to the motion.  Even if she interpreted MW Custom Papers' position as mere hyperbole, Neumann was obligated to articulate some basis in support of her claim.  *See, e.g.*, *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (explaining that "a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995).  Neumann, however, focused her opposition entirely on the foreseeability element of the duty analysis.  (Resp. at 3, 5–7.)  While essential, foreseeability is not the only factor to be considered.  *Simpkins*, 358 Ill. Dec. at 618–19, 965 N.E.2d at 1097–98; *Widlowski*, 138 Ill.2d at 374–75, 562 N.E.2d. at 969.

In any event, the crux of the motion boils down to a dispositive question: taking into account each of the four factors and underlying public policy, does (or should) Illinois recognize

a duty running to family members in take-home asbestos cases? Illinois appellate courts, as well as other state courts around the country, have split on the issue. In *Simpkins*, the Fifth District surveyed similar cases in Illinois and elsewhere and concluded that "employers owe the immediate families of their employees a duty to protect against take-home asbestos exposure." *Simpkins*, 401 Ill. App. 3d at 1119–20, 929 N.E.2d at 1266. The Fifth District was persuaded by Tennessee and New Jersey supreme court rulings recognizing the duty and rejected the argument that this outcome "would expose employers to limitless liability to the entire world." *Id.* at 1118, 929 N.E.2d at 1265 (internal quotations omitted). On the other hand, the Fourth District in *Holmes* reviewed key cases but then declined to follow *Simpkins* and reached the opposite conclusion. 353 Ill. Dec. at 367–68, 955 N.E.2d at 1178 (concluding that "no duty was owed to decedent in this case" and further finding that, even if it followed *Simpkins*, Holmes had failed to establish foreseeability).

As mentioned earlier, the Fifth District's decision in *Simpkins* was appealed to the Illinois Supreme Court. In his dissent, Justice Freeman noted that the court accepted the case "ostensibly" to "answer the substantive question of whether a legal duty exists at all for secondhand asbestos exposure."[2] 358 Ill. Dec. at 621, 965 N.E.2d at 1100. The Illinois Supreme Court evaluated the sufficiency of the allegations as to the foreseeability factor and remanded for further proceedings. *Id.* at 620–21, 965 N.E.2d at 1099–1100. In light of that remand, the court did not consider the remaining factors and did not explore any public policy ramifications of the alleged duty. *Id.* The Illinois Supreme Court, therefore, did not reach the substantive question posed by the appellate court split and by this motion.

---

[2] Justice Freeman considered each of the four duty factors in his dissent and, joined by Justice Burke, concluded that no duty should exist as a matter of law. 358 Ill. Dec. at 621–23, 965 N.E.2d at 1100–02. Justice Freeman relied on the reasoning of the highest courts of Michigan and New York in reaching his conclusion. *Id.*

The lack of explicit direction from the Illinois Supreme Court is problematic for us because our job, as a court sitting in diversity, "is to apply state substantive law, as we believe the highest court of the state would apply it." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007); *AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001). Here, however, we cannot predict how the Illinois Supreme Court would resolve this question. The majority left no clues for us in *Simpkins* about how to weigh the legitimate public policy concerns attendant with finding a duty in secondhand asbestos exposure cases.[3]

"In the absence of guiding decisions by the state's highest court, we consult and follow the decisions of intermediate appellate courts unless there is a convincing reason to predict the state's highest court would disagree." *ADT Soc. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012); *Pisciotta*, 499 F.3d at 635; *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). Again, we are stymied. Two Illinois appellate courts have addressed this question directly, in *Simpkins* and in *Holmes*, with different conclusions. Having reviewed these opinions, we cannot say that either holding informs our attempt to guess which approach would be favored by the Illinois Supreme Court.

If appellate court rulings do not light our path, we may look to "other relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court . . . would decide the issue at hand." *Pisciotta*, 499 F.3d at 635 (internal quotation omitted). The parties have not directed us to any such authorities, and we have found nothing instructive.

---

[3] Moreover, we do not construe the *Simpkins* remand order as an implicit endorsement of take-home asbestos negligence liability. The Illinois Supreme Court simply did not reach the question.

As our next step, we may "examine the reasoning of courts in other jurisdictions addressing the same issue" for whatever guidance may be gleaned. *Id.*; *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 852–53 (N.D. Ill. 2008). Yet again, the courts are divided. While the majority of state courts have declined to extend a duty in this situation, that fact alone is not persuasive, particularly because duty and negligence principles vary among the states.[4] *Compare Satterfield v. Breeding Insulation, Inc.*, 266 S.W.3d 347, 359–75 (Tenn. 2008) (imposing duty on father's employer), *and Olivo v. Owens-Illinois, Inc.*, 186 N.J. 394, 402–05, 895 A.2d 1143, 1147–50 (N.J. 2006) (imposing duty on husband's employer), *with Georgia Pacific, LLC v. Farrar*, 432 Md. 523, 531–41, 69 A.3d 1028, 1033–39 (Md. 2013) (finding no duty owed to granddaughter of employee), *and In re Certified Question from Fourteenth Dist. Ct. of App. of Tex.*, 479 Mich. 498, 509–25, 740 N.W.2d 206, 213–22 (Mich. 2007) (finding no duty owed to daughter by owner of property where her father worked), *and New York City Asbestos Litig. v. A.C. & S., Inc.*, 5 N.Y.3d 486, 493–98, 840 N.E.2d 115, 118–22 (N.Y. 2005) (finding no duty owed to wife of employee). Additionally, we are not confident that any particular state's reasoning provides greater insight into the potential rationale of the Illinois Supreme Court. Our survey into each state's rulings thus far has proved unproductive. As far as we can tell, the Illinois Supreme Court might join the minority view, espoused by Tennessee and New Jersey, as the Fifth District did in *Simpkins*, just as readily as it might fall in line with the majority view.

In sum, there are no precedents or other authorities that convince us how the Illinois Supreme Court would rule on this novel duty question. As the Seventh Circuit has repeatedly

---

[4] The Illinois and other courts who have addressed this issue have done so in a slightly different context. Typically, secondhand asbestos actions are brought as claims against employers or as premises liability claims. In this case, however, Neumann is suing manufacturers and distributors who neither employed her son, nor owned the premises where he worked.

12

instructed, "[w]hen we are faced with two opposing and equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000); *Pisciotta*, 499 F.3d at 635–36; *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation & Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002); *see Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Federal courts are loathe to fiddle around with state law."); *see also Gondeck v. A Clear Title & Escrow Exch., LLC*, 47 F. Supp. 3d 729, 744–45 (N.D. Ill. 2014); *LaSalle Nat'l Bank Assoc.*, 588 F. Supp. 2d at 853. Consistent with this principle, we adopt the narrower view of duty followed by the Fourth District in *Holmes*, Justice Freeman's dissent in *Simpkins*, and the majority of state courts to have considered this question. We conclude, as a matter of law, that MW Custom Papers did not owe a duty to Neumann, in light of the magnitude of the burden of protecting her and the ramifications of imposing that burden on MW Custom Papers.

## CONCLUSION

As discussed above, Neumann's negligence claim fails because she cannot establish that MW Custom Papers owed her any duty. We therefore grant MW Custom Papers' motion to dismiss. It is so ordered.

									*[signature: Marvin E. Aspen]*

									_____
									Marvin E. Aspen
									United States District Judge

Dated: March 10, 2016
		Chicago, Illinois